1

2

3

4

5

6                              UNITED STATES DISTRICT COURT

7                                      DISTRICT OF NEVADA

8                                              * * *

9    THEODORE C. SNURE,                         Case No. 3:11-cv-00344-MMD-WGC
                                    Petitioner,
10          v.
                                                             ORDER
11   WARDEN, et al.,

12                                 Respondents.

13

14          Before the Court for decision is a habeas corpus petition under 28 U.S.C. § 2254

15   brought by Theodore C. Snure, a Nevada prisoner.

16   **I.     PROCEDURAL BACKGROUND[1]**

17          On April 5, 2006, Snure was convicted of sexual assault on a child, after entering

18   a guilty plea in the Second Judicial District Court in Washoe County, Nevada. The court

19   sentenced Snure to life in prison with the possibility of parole after 20 years.

20          Snure filed a direct appeal, but voluntarily dismissed it on October 16, 2006.

21          Prior to that dismissal, on September 13, 2006, Snure filed a proper person

22   petition for writ of habeas corpus in the state district court. After appointment of counsel,

23   Snure filed a supplemental petition on December 21, 2006.

24          On March 1, 2007, the state district court denied some of the grounds in Snure's

25   petition and granted an evidentiary hearing with respect to the remaining grounds. After

26   an evidentiary hearing, the court denied the remaining grounds. Snure appealed. On

27   _____

28          [1]Except where indicated, this procedural background is derived from the exhibits
     provided by the respondents at ECF Nos. 7, 8, and 30.

September 10, 2010, the Nevada Supreme Court affirmed the state district court's denial of Snure's petition.

On May 13, 2011, this Court received Snure's federal petition for a writ of habeas corpus containing nine claims. (ECF No. 4.) Pursuant to respondents' initial motion to dismiss (ECF No. 6), this Court dismissed Grounds 2, 4, 6, 8 and 9 with prejudice because each of those claims failed to state a cognizable claim for federal habeas relief. (ECF No. 18.) The Court further concluded that Grounds 1, 3 and 5 were unexhausted. *Id.*

On March 16, 2012, this Court granted Snure a stay to allow him to exhaust state court remedies for his unexhausted claims. (ECF No. 22.) On May 4, 2012, Snure filed a second petition for a writ of habeas corpus in state district court raising his unexhausted claims. The petition was dismissed as procedurally defaulted. Snure appealed. The Nevada Supreme Court affirmed the lower court's decision.

On January 20, 2015, this Court granted Snure's motion to reopen his federal habeas proceedings. (ECF No. 28.) On February 24, 2015, respondents filed the motion to dismiss. On July 3, 2015, this Court granted respondents' motion and dismissed Grounds 1, 3 and 5 as procedurally defaulted.

Remaining before the Court for a decision on the merits is Ground 7.

## II.    STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

1    28 U.S.C. § 2254(d).

2        A decision of a state court is "contrary to" clearly established federal law if the

3    state court arrives at a conclusion opposite that reached by the Supreme Court on a

4    question of law or if the state court decides a case differently than the Supreme Court

5    has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–

6    06 (2000). An "unreasonable application" occurs when "a state-court decision

7    unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

8    *Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court

9    concludes in its independent judgment that the relevant state-court decision applied

10   clearly established federal law erroneously or incorrectly." *Id.* at 411.

11       The Supreme Court has explained that "[a] federal court's collateral review of a

12   state-court decision must be consistent with the respect due state courts in our federal

13   system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a

14   'highly deferential standard for evaluating state-court rulings,' and 'demands that state-

15   court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773

16   (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*,

17   537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks

18   merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

19   the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101

20   (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court

21   has emphasized "that even a strong case for relief does not mean the state court's

22   contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75

23   (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA

24   standard as "a difficult to meet and highly deferential standard for evaluating state-court

25   rulings, which demands that state-court decisions be given the benefit of the doubt")

26   (internal quotation marks and citations omitted).

27       "[A] federal court may not second-guess a state court's fact-finding process

28   unless, after review of the state-court record, it determines that the state court was not

3

1  merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.

2  2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a

3  state court and based on a factual determination will not be overturned on factual

4  grounds unless objectively unreasonable in light of the evidence presented in the state-

5  court proceeding, § 2254(d)(2).").

6  **III.   DISCUSSION**

7          In Ground 7, Snure alleges that his plea counsel was ineffective for failing to

8  investigate whether his statements to law enforcement were obtained in violation of his

9  *Miranda*[2] rights and for failing to file a motion to suppress them. (ECF No. 4 at 15.)[3]

10         Snure was interviewed three times by Detective Kelley Heydon. All three

11  interviews took place in December 2005 — the first two at the Washoe County Sheriff's

12  Office and the third in the visiting room of a detention facility. (ECF Nos. 7-27 and 7-28.)

13  At the outset of the first interview, Snure confirmed that he had come to the interview

14  voluntarily. (ECF No. 7-27 at 19.) In addition, Heydon advised Snure that he was not

15  under arrest and that he was free to terminate the interview and leave. (*Id*. at 20.)

16  Toward the end of the interview, Heydon informed Snure that he was under arrest, and

17  then read him his *Miranda* rights. (ECF No. 7-28 at 5-8.) Snure waived those rights and

18  continued to talk for the brief remaining portion of the interview. (*Id*. at 9-23.)

19         At the beginning of the second interview a few days later, Heydon read Snure his

20  *Miranda* rights, which he again waived. (*Id*. at 27-28.) At the third interview a week later,

21  Snure declined Heydon's offer to have his rights read to him a third time. (*Id*. at 43-44.)

22         Ineffective assistance of counsel claims are governed by *Strickland v.*

23  *Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must satisfy two

24  prongs to obtain habeas relief — deficient performance by counsel and prejudice. 466

25  U.S. at 687. To meet the performance prong, a petitioner must demonstrate that his

26  counsel's performance was so deficient that it fell below an "objective standard of

27          [2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

28          [3]References to page numbers for ECF documents are based on ECF pagination.

4

1   reasonableness." *Id.* at 688. As to the prejudice prong, the court "must ask if the

2   defendant has met the burden of showing that the decision reached would reasonably

3   likely have been different absent [counsel's] errors." *Strickland*, 466 U.S. at 696. Put

4   another way, a habeas petitioner "must show that there is a reasonable probability that,

5   but for counsel's unprofessional errors, the result of the proceeding would have been

6   different." *Id.* at 694.

7       To demonstrate ineffective assistance of counsel in the context of a challenge to

8   a guilty plea, a petitioner must show both that counsel's advice fell below an objective

9   standard of reasonableness as well as a "reasonable probability" that, but for counsel's

10  errors, the petitioner would not have pled guilty and would have insisted on going to

11  trial. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985) (holding that the two-part *Strickland* test

12  applies to challenges to guilty pleas based on the ineffective assistance of counsel).

13  When an ineffective assistance claim is based upon counsel's failure to file a motion to

14  suppress evidence on constitutional grounds, the prejudice prong must be established

15  by a showing that such a motion had merit and that there was a reasonable likelihood

16  that the exclusion of the evidence would have changed the result of a trial. *Kimmelman*

17  *v. Morrison*, 477 U.S. 365, 375 (1986).

18      Snure presented Ground 7 as a claim for relief in his first state post-conviction

19  proceeding. The state district court addressed the claim as follows:

20          Citing the Fifth, Sixth and Fourteenth Amendments, Snure alleges
            that counsel was ineffective in advising him to accept the bargain without
21          first moving to suppress his pretrial statement to the police. Since Snure
            failed to prove that his statement was the result of a *Miranda* violation or
22          was otherwise involuntary, he failed to prove that Sullivan's failure to
            pursue suppression was either objectively unreasonable or prejudicial.
23

24  (ECF No. 8-15 at 5-6.)

25      On appeal, the Nevada Supreme Court correctly identified *Strickland*, *Hill*, and

26  *Kimmelman* as providing the relevant federal law standards. (ECF No. 8-26 at 2-3.) The

27  court adjudicated Ground 7 as follows:

28  ///

Appellant argues that counsel was ineffective for failing to move to suppress his confession to police. Appellant fails to demonstrate prejudice. To demonstrate prejudice, appellant must first demonstrate that his suppression claim has merit. Kirksey v. State, 112 Nev. 980, 990, 923 P.2d 1102, 1009 (1996) (citing Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)). Appellant alleges the presence of only one of the six factors this court applies in determining the voluntariness of a confession (prolonged questioning), see id. at 991, 923 P.2d at 1109, but presents no evidence that supports his claim. Appellant therefore has not demonstrated by a preponderance of the evidence that a motion to suppress his confession would have been successful and, accordingly, fails to demonstrate a reasonable probability that, but for counsel not filing the motion, he would not have pleaded guilty and would have insisted on going to trial. We therefore conclude that the district court did not err in denying this claim.

*(Id.* at 3.)

Snure's argument to the Nevada Supreme was focused on counsel's performance, with little discussion as to the grounds upon which his confession should have been suppressed. (ECF No. 8-22 at 14-21.) Now, Snure argues to this Court that his first interview with Detective Heydon was a custodial interrogation for the purposes of *Miranda*. (ECF No. 36.) As factors weighing in favor of a finding that he was in custody, he points to the fact that he was the sole focus of the investigation, the length and setting of the interview, and the likelihood that he would have been arrested if he tried to leave. (*Id.* at 3-4.)

In deciding whether a suspect is in custody for purposes of *Miranda*, "the ultimate inquiry is simply whether there is 'formal arrest or restraint on freedom of movement' of the degree associated with formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam); *see also Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) (finding custody begins at arrest or the functional equivalent of a formal arrest). This inquiry involves a review of the circumstances surrounding the interrogation to decide whether a reasonable person would have felt free to terminate the interrogation and leave. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). Relevant factors for a court to consider in evaluating how a reasonable person would have gauged his "freedom of movement" include: the location of the questioning; its duration; the statements made during the interview; the presence or absence of physical restraints during the

1   questioning; and whether the interviewee was released at the end of the questioning.

2   *Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012).

3          As noted, the location of the interview was the sheriff's office, but Snure went to

4   the location voluntarily. The record does not specify the length of the interview in terms

5   of time, but based on the transcript, it likely did not exceed a couple hours. The

6   statements made during the interview weigh heavily in favor of finding that Snure was

7   not in custody. Snure was not subject to physical restraint during the interview, but he

8   was arrested at its conclusion. In sum, there was some factual basis for counsel to

9   argue that the first interview was custodial, but not enough for Snure to prevail on that

10  issue. In addition, Snure has made no showing that his confession was involuntary, and

11  thus inadmissible, independent of *Miranda*. *See Dickerson v. United States*, 530 U.S.

12  428, 444 (2000) (noting that *Miranda* does not dispense with the voluntariness inquiry,

13  but cases in which a defendant can show a confession was involuntary despite police

14  adherence to *Miranda* are rare).

15         In light of the foregoing, the Nevada Supreme Court was not unreasonable in

16  concluding that Snure was not prejudiced by counsel's failure to bring a motion to

17  suppress, nor was the court's decision based upon an unreasonable determination of

18  the facts. Ground 7 is denied.

19  **IV.    CONCLUSION**

20         For the reasons set forth above, Snure's petition for habeas relief is denied.

21                                      *Certificate of Appealability*

22         This is a final order adverse to the petitioner. As such, Rule 11 of the Rules

23  Governing Section 2254 Cases requires this Court to issue or deny a certificate of

24  appealability (COA). Accordingly, the Court has sua sponte evaluated the claims within

25  the petition for suitability for the issuance of a COA. See 28 U.S.C. § 2253(c); *Turner v.*

26  *Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

27         Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner

28  "has made a substantial showing of the denial of a constitutional right." With respect to

claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. Id.

Having reviewed its determinations and rulings in adjudicating Snure's petition, the Court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Snure's habeas claims.

It is therefore ordered that petitioner's petition for writ of habeas corpus (ECF No. 4) is denied. The Clerk will enter judgment accordingly.

It is further ordered that a certificate of appealability is denied.

DATED THIS 20th day of June 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE